UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH HILL, | No. 2:15-cv-2012 AC P |
| Plaintiff, | |
| v. | ORDER and |
| GARY SWARTHOUT, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF No. 32.

I.    Procedural History

Plaintiff filed a first amended complaint on March 6, 2017.[1]  ECF No. 12.  The court screened the complaint, finding that plaintiff had stated cognizable equal protection claims against defendants Alcaraz, Mejorado, Sandy, Cappel, and Swarthout.  ECF No. 16 at 2-3. Plaintiff was also found to have stated a due process claim against defendant Sandy and deliberate indifference claims against defendants Sandy, Cappel, and Swarthout.  Id. at 3-5.  Defendants

---

[1] Since plaintiff is a prisoner proceeding pro se, he is afforded the benefit of the prison mailbox rule.  Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1  filed an answer to the complaint, ECF No. 25, and after the close of discovery, moved for

2  summary judgment, ECF No. 32.

3       II.     <u>Plaintiff's Allegations</u>

4       Plaintiff alleges that defendants Alcaraz and Mejorado violated his equal protection rights

5  by falsely identifying him as a participant in a riot, based solely on the fact that he is African

6  American and was near the area where the riot took place.  ECF No. 12 at 8-9, 14-15.  Defendant

7  Sandy violated his right to equal protection when she found him guilty of a rules violation for

8  participating in the riot, solely because of his race, and defendants Cappel and Swarthout further

9  violated his rights by upholding his disciplinary conviction.  <u>Id.</u> at 14-15.  Sandy also violated

10  plaintiff's due process rights because she was not impartial, denied his request to call a witness,

11  found him guilty without any evidence, and failed to consider his mental health status during his

12  disciplinary hearing.  <u>Id.</u> at 9-12, 15-16.  Finally, plaintiff alleges that defendants Sandy, Cappel,

13  and Swarthout were deliberately indifferent to his serious mental health needs when they failed to

14  consider his mental health concerns when assigning him to a security housing unit (SHU) term as

15  a result of the disciplinary hearing.  <u>Id.</u> at 13-14, 16.

16       III.     <u>Motion for Summary Judgment</u>

17       A.     <u>Defendants' Arguments</u>

18       Defendants move for summary judgment on the equal protection and deliberate

19  indifference claims against them, on the ground that plaintiff failed to exhaust his administrative

20  remedies as to those claims prior to filing suit.  ECF No. 32-2 at 12-18.  They further contend that

21  plaintiff's due process rights were not violated because he was not deprived of a protected liberty

22  interest and even if he was, he was afforded all the process he was due.  <u>Id.</u> at 18-24.  Finally,

23  defendants argue that Alcaraz, Mejorado, and Sandy are entitled to qualified immunity.  <u>Id.</u> at 24-

24  28.

25       B.     <u>Plaintiff's Response</u>

26       It is well-established that the pleadings of pro se litigants are held to "less stringent

27  standards than formal pleadings drafted by lawyers."  <u>Haines v. Kerner,</u> 404 U.S. 519, 520 (1972)

28  (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), <u>overruled on other grounds</u>, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 925, 928 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. <u>Id.</u> (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Accordingly, while plaintiff has largely complied with the rules of procedure, the court will also consider the record before it in its entirety. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff argues that defendants' motion for summary judgment should be denied because administrative remedies as to all claims and defendants have been exhausted, there are issues of material fact in dispute, and defendants are not entitled to qualified immunity. ECF No. 36 at 1, 19-22.

IV.     <u>Legal Standards for Summary Judgment</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 32-1; see Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.    Undisputed Material Facts

At all times relevant to the complaint, plaintiff was a prisoner confined at California State Prison-Solano (CSP-Solano), and defendants Swarthout, Cappel, Sandy, Alcaraz, and Mejorado were employed there in various capacities. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 32-3) ¶¶ 1-2; Response to DSUF (ECF No. 36 at 7-17) ¶¶ 1-2.

On April 4, 2012, a riot erupted while plaintiff was on the B-Facility exercise yard. DSUF ¶ 4; Response to DSUF ¶ 4. The riot involved approximately ninety-eight inmates, including seventy-two Black inmates and twenty-six inmates identified as "Others," including American

////

Indians, Asians, and Pacific Islanders. DSUF ¶ 5.[2] Defendant Mejorado called a Code 3 riot over his radio and staff responded to the yard and formed a skirmish line, giving verbal commands for the rioting inmates to stop and get down. DSUF ¶¶ 6-7; Response to DSUF ¶¶ 6-7. The inmates continued fighting for approximately six minutes before separating by race in large groups. DSUF ¶ 8; Response to DSUF ¶ 8. Defendants assert that when the inmates eventually took prone positions, the Black inmates did so in the grassy area adjacent to Building 9 near the soccer goal post, while inmates identified as "Others" took prone positions on the sidewalk near the baseball backstop adjacent to Building 10. DSUF ¶ 9. However, plaintiff alleges that the Black inmates dispersed in different directions. Response to DSUF ¶ 9. Defendant Alcaraz acted as the scribe and identified the Black and "Other" inmates by checking their identification cards and marking their locations on the yard. DSUF ¶ 10; Response to DSUF ¶ 10.[3] Plaintiff was identified as inmate number 77 near a group of Black inmates who were identified as participants in the riot, though plaintiff asserts that some were ultimately found to not be participants. DSUF ¶ 11; Response to DSUF ¶ 11. After the schematic was complete, the inmates were escorted for medical evaluation and placement in administrative segregation. DSUF ¶ 12; Response to DSUF ¶ 12. Inmates suspected of being involved in the riot were issued a rules violation for participating in a riot, and plaintiff's rules violation report was authored by defendant Mejorado. DSUF ¶¶ 15-16.[4]

On April 4, 2012, plaintiff was issued an administrative segregation placement notice that stated that he had been involved in the riot on Facility B and would be retained in administrative

---

[2] Although plaintiff states this fact is disputed, he disputes only that he was involved in the riot. Response to DSUF ¶ 5. To the extent plaintiff's dispute as to his involvement was an objection to the number of overall inmates involved and the number of Black inmates involved as listed by defendants, those numbers have been reduced by one to reflect plaintiff's dispute as to his involvement and DSUF ¶ 5 is deemed otherwise undisputed.

[3] Defendants assert that Alcaraz "identified each inmate," DSUF ¶ 10, while plaintiff asserts that he "only identified black inmates and inmates identified as others by their I.d.s," Response to DSUF ¶ 10. To the extent there is a dispute as to whether any other groups of inmates were identified, the dispute is immaterial.

[4] Although plaintiff states that DSUF ¶¶ 15 and 16 are disputed, he does not actually dispute the statements and instead argues that there was no evidence that he participated in the riot and that all the rules violation reports were identical, Response to DSUF ¶¶ 15-16, and DSUF ¶¶ 15-16 are therefore deemed undisputed.

segregation pending his disciplinary hearing.  DSUF ¶¶ 17-18; Response to DSUF ¶¶ 17-18.  On April 12, 2012, he appeared before the Instructional Classification Committee (ICC) to review his administrative segregation placement.  ECF No. 36 at 68.  The committee reviewed the reasons for plaintiff's placement in administrative segregation and he acknowledged his understanding of his current housing status and agreement with the decision.  Id.  A mental health assessment was also requested, and plaintiff was interviewed by a doctor on April 18, 2012.  DUSF ¶¶ 20-21; Response to DSUF ¶¶ 20-21.  The doctor completed a mental health care assessment and determined that there were no mental health issues that that would prevent plaintiff from understanding the disciplinary process or representing his interests at the disciplinary hearing.  DSUF ¶ 22; Response to DSUF ¶ 22.  The doctor also opined that plaintiff's mental health condition did not contribute to the behavior that led to the rules violation and that if found guilty, plaintiff's mental health factors did not need to be considered in assessing the penalty.  DSUF ¶¶ 23-24; Response to DSUF ¶¶ 23-24.[5]

Because of plaintiff's placement in administrative segregation, he was unable to complete his own investigation and was assigned an investigative employee to assist him with his investigation.  DSUF ¶ 25; Response to DSUF ¶ 25.  The investigative employee interviewed defendant Mejorado, who stated that the video and defendant Alcaraz's schematic identified all inmates in the direct area of the riot as being involved and that his report was accurate as written.  DSUF ¶ 28; Response to DSUF ¶ 28.

Plaintiff's disciplinary hearing was held on May 12, 2012, and he received notice of the hearing more than twenty-four hours before it took place.  DSUF ¶¶ 29-30; Response to DSUF ¶¶ 29-30.  The hearing took place before defendant Sandy, though plaintiff claims that he objected to Sandy acting as the hearing officer and she failed to document his objections.  DSUF ¶ 30; Response to DSUF ¶ 30.  Plaintiff pled not guilty to the charge and was shown the video of the riot.  DSUF ¶¶ 31-32; Response to DSUF ¶¶ 31-32.  Defendant Mejorado provided testimony

_____

[5]  Plaintiff does not dispute either fact, but asserts that the doctor failed to document his "anxiety, loss of sleep, and thoughts of hurting someone."  Response to DSUF ¶ 24.

that plaintiff was observed in the area of the riot[6] and plaintiff's request for inmate Sanders to be a witness at the hearing was denied because Sanders was charged with the same offense.[7] DSUF ¶¶ 33-34; Response to DSUF ¶¶ 33-34. Sandy found plaintiff guilty of the charge, but because the hearing had not been held within the thirty-day time constraints, he was not eligible to be assessed a credit loss. DSUF ¶¶ 35-36; Response to DSUF ¶¶ 35-36; ECF No. 32-3 at 22-23.

Plaintiff was referred to the ICC for program and custody review and for a Security Housing Unit (SHU) term assessment. DSUF ¶ 37; Response to DSUF ¶ 37. He appeared before the ICC on June 14, 2012, where it was noted that he had been placed in administrative segregation on April 4, 2012, and that the finding of guilt required a four-month SHU term. DSUF ¶ 38: Response to DSUF ¶ 38. During the hearing he stated that he understood the reasons for his current housing status and agreed with the committee's decision. ECF No. 32-3 at 28. The ICC retained plaintiff in administrative segregation where he remained until July 3, 2012. DSUF ¶¶ 38-39; Response to DSUF ¶¶ 38-39.

Between 2012 and 2013, plaintiff filed nine inmate grievances, only one of which concerned the riot and subsequent rules violation hearing. DSUF ¶¶ 43-44; Response to DSUF ¶¶ 43-44.

VI.   Discussion

A.   Exhaustion

1.   Governing Legal Principles

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v.

---

[6] The parties appear to dispute whether the testimony was provided in person or through his statements to the investigative employee, but this dispute is immaterial.
[7] The parties dispute whether plaintiff also failed to sufficiently identify Sanders. Response to DSUF ¶ 34.

Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones, 549 U.S. at 204, 216. "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original) (citation omitted). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 136 S. Ct. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857 (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. ////

9

Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), <u>overruled on other grounds by</u> <u>Albino</u>, 747 F.3d at 1168-69.

2.    <u>Discussion</u>

It is undisputed that a grievance process existed and was available to plaintiff.  DSUF ¶ 43; Response to DSUF ¶ 43.  It is further undisputed that only one of plaintiff's appeals, Appeal No. SOL 12-01352, was related to the allegations in this complaint and that the administrative remedies for this appeal were exhausted.  DSUF ¶¶ 43-44; Response to DSUF ¶¶ 43-44.  The parties dispute whether this appeal was sufficient to exhaust all the claims in the First Amended Complaint.  Defendants argue that while plaintiff exhausted his due process claims, he failed to exhaust his equal protection and deliberate indifference claims, ECF No. 32-2 at 14-15, 18, while plaintiff argues that the appeal was sufficient to exhaust all of his claims, ECF No. 36 at 19-20.

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.  To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations."  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) (citing <u>Jones</u>, 549 U.S. at 218).  At the time plaintiff submitted his administrative appeal, California regulations required that an inmate "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. Tit. 15, § 3084.2(a) (2012).  Inmates were also required to "list all staff member(s) involved and . . . describe their involvement in the issue" as well as "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form."  <u>Id.</u>, § 3084.2(a)(3)-(4).

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

<u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009).

Appeal No. SOL 12-01352 identified the issue as "DUE PROCESS OF LAW-TIMELY-FAIR IMPARTIAL HEARING DENIED."  ECF No. 32-3 at 128.  The appeal went on to allege that the disciplinary hearing violated due process because it was conducted outside the thirty-day

10

time limit and there was insufficient evidence of plaintiff's guilt, in part because defendant Mejorado would only say that plaintiff was in the area when asked about plaintiff's participation in the riot.  ECF No. 32-3 at 128-31.  Plaintiff further asserted that Sandy was not an impartial hearing officer, mistakenly identified him as an "Other," falsely located him in an area to which inmates identified as "Other" fled, and denied plaintiff an inmate witness despite the witness being properly identified by name and CDCR number.  Id. at 130-31.

Plaintiff's appeal makes no mention of his mental health and contains no allegations that any defendant failed to consider his mental health status when assigning him to a SHU term.  Id. at 128-31.  Appeal No. SOL 12-01352 therefore fails to exhaust plaintiff's administrative remedies as to his Eighth Amendment deliberate indifference claims against defendants Sandy, Cappel, and Swarthout.  To the extent plaintiff also claims that Sandy violated his due process rights by not considering his mental health status, this claim is also unexhausted.[8]

The appeal also fails to exhaust plaintiff's equal protection claim.  Although plaintiff claimed that Mejorado answered questions about his participation by responding that plaintiff was in the area, plaintiff makes no mention of his race being a factor.  Absent that allegation, the appeal merely alleges that Mejorado identified him as being part of the riot because he was in the wrong place at the wrong time, not because of his race.  Moreover, while the allegations against Sandy state that she mistakenly identified him as "Other" and falsely located him on the diagram, this claim is not sufficient to alert the prison to plaintiff's claim that he was found guilty based on his race, but instead indicates only that plaintiff was misidentified.

In sum, Appeal No. SOL 12-01352 was sufficient to exhaust plaintiff's claims that Sandy violated his due process rights because she was not impartial, denied his request to call a witness, and found him guilty without any evidence.  However, it did not exhaust his equal protection or deliberate indifference claims or his claim that Sandy denied him due process when she failed to consider his mental health status.  As to those claims, defendants are entitled to summary judgment.

---

[8]  The court notes that the failure to consider plaintiff's mental health conditions is not one of the protections outlined in Wolff v. McDonnell, 418 U.S. 539 (1974).

B.    Due Process

Under the Due Process Clause of the Fourteenth Amendment, the government cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to have a due process claim there must be a constitutionally protected liberty or property interest. Ingraham v. Wright, 430 U.S. 651, 672 (1977). "Constitutionally protected liberty interests can arise under either state law or the Due Process clause." Duffy v. Riveland, 98 F.3d 447, 456-57 (9th Cir. 1996) (citing Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987)). The Constitution itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." Id. at 222.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). An inmate subject to disciplinary sanctions that include the loss of good time credits must receive (1) at least twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564-65 (citation and internal quotation marks omitted); (3) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

The complaint alleges that plaintiff's due process rights were violated because defendant Sandy denied his request to call a witness, found him guilty without any evidence, and was not impartial. ECF No. 12 at 9-12, 15-16.

It is undisputed that because plaintiff's hearing was held outside the thirty-day time constraints, he was never subject to the loss of good time credits as a result of his disciplinary

hearing and did not lose any good time credits.  DSUF ¶ 36; Response to DSUF ¶ 36.  Plaintiff

was therefore not entitled to the protections outlined in Wolff.  Instead, plaintiff was entitled to

the procedural protections applicable to placement in administrative segregation, as outlined in

Hewitt v. Helms.  459 U.S. 460, 472 (1983), overruled on other grounds by Sandin v. Conner,

515 U.S. 472 (1995).  Under Hewitt, due process requires that the prisoner be given an "an

informal, nonadversary review of the information supporting [his] administrative confinement,

including whatever statement [he] wishe[s] to submit, within a reasonable time after confining

him to administrative segregation."  Id.

In this case, plaintiff had a hearing before the ICC eight days after his placement in

administrative segregation, at which time the reasons for his placement were discussed and he

acknowledged his understanding of and agreement with the decision.  DSUF ¶ 17; Response to

DSUF ¶ 17; ECF No. 36 at 68.  Prior to the decision to retain plaintiff in administrative

segregation for his SHU term, plaintiff was again seen by the ICC and the reasons for his

placement were discussed and he acknowledged his understanding of and agreement with the

decision.  DSUF ¶¶ 37-38; Response to DSUF ¶¶ 37-38; ECF No. 32-3 at 28.  Accordingly,

plaintiff received all the process he was due prior to his placement and retention in administrative

segregation.  Furthermore, even if plaintiff was entitled to the due process protections outlined in

Wolff, which he was not, he still received all the process he was due.

Plaintiff argues that Sandy's denial of his request for an inmate witness violated due

process because it was not based on a finding that his witness would pose a danger to himself,

plaintiff, or others.  ECF No. 36 at 5, ¶ 25.  However, the right to call witnesses is a limited one,

and hearing officers may deny the request for a witness on a number of grounds other than

dangerousness.  Wolff, 418 U.S. at 566 (witnesses may be denied in order to keep hearing within

reasonable limits, as well as "for irrelevance, lack of necessity, or the hazards presented in

individual cases").  In this case, plaintiff's witness request was denied on the grounds that

plaintiff was not certain of the witness's name and the witness was charged with being involved

in the same incident.  DSUF ¶ 34; ECF No. 32-3 at 22.  Although plaintiff asserts that he properly

identified his witness by name and CDCR number, he does not dispute that his witness was

13

denied in part on grounds that he was charged with the same offense. Response to DSUF ¶ 34. This indicates that there were concerns with having an inmate who was also charged with being involved in the incident present at the hearing. Given that the charge was participating in a riot, such concerns are "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" Ponte v. Real, 471 U.S. 491, 497 (1985).

Plaintiff also alleges that his due process rights were violated because he was found guilty without any evidence. ECF No. 12 at 10-11. However, plaintiff's assertion that there was no evidence is clearly based upon his differing opinion as to the proper interpretation of the evidence rather than the total absence of evidence. Id.; ECF No. 36 at 4-5. A finding of guilt need only be "supported by some evidence in the record." Hill, 472 U.S. at 454. The rules violation report, various incident reports, and video of the incident that Sandy relied on for her finding of guilt constitute "some evidence."

Finally, plaintiff alleges that Sandy was not impartial based upon the fact that he saw her respond to the riot and she allegedly disregarded evidence of his innocence, denied his request for a witness, and found him guilty without evidence. Id. at 10-11. However, claims of bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975). Moreover, unfavorable or adverse rulings standing alone "almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994) (citation omitted). As addressed above, Sandy did not find plaintiff guilty without evidence, and her denial of plaintiff's witness was permissible. Furthermore, the fact that Sandy responded to the riot does nothing to show she was biased, particularly since there are no indications that she had any involvement with plaintiff during the response. Similarly, the allegations that she disregarded evidence that plaintiff asserts showed he was innocent, such as his lack of exposure to OC spray, fail to show bias and instead simply show that she and plaintiff disagreed as to the weight and meaning of the evidence.

For the reasons outlined above, the undisputed facts establish that plaintiff's due process rights were not violated. Defendants' motion for summary judgment should be granted as to the due process claim against Sandy.

VII.    Conclusion

Plaintiff's equal protection and deliberate indifference claims, as well as his claim that Sandy denied him due process when she failed to consider his mental health status, were not administratively exhausted and should therefore be dismissed without prejudice. The claim that Sandy violated plaintiff's due process rights because she was not impartial, denied his request to call a witness, and found him guilty without any evidence should be denied because plaintiff received all the process he was due.

VIII.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be granted. Your claims that Alcaraz, Mejorado, Sandy, Cappel, and Swarthout identified you as and found guilty of participating in a riot based on your race were not exhausted. Your claims that Sandy, Cappel, and Swarthout were deliberately indifferent to your health and that Sandy also violated your due process rights when they did not consider your mental health conditions when you were placed in administrative segregation were also not exhausted. Because the claims were not exhausted, it is being recommended that they be dismissed without prejudice. It is also being recommended that your claim that Sandy denied you due process during your disciplinary hearing be dismissed because you received all the process that was constitutionally required.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

IT IS HEREBY RECOMMENDED that:

1.    Defendants' motion for summary judgment, ECF No. 32, be granted on the following grounds:

a.    Plaintiff's equal protection claims against defendants Alcaraz, Mejorado, Sandy, Cappel, and Swartout; deliberate indifference claims against Sandy, Cappel, and Swarthout; and due process claim against Sandy for failing to consider his mental health status were not exhausted and should be dismissed without prejudice.

b.    Plaintiff's claim that Sandy violated his due process rights because she was not impartial, denied his request to call a witness, and found him guilty without any evidence should

be dismissed because plaintiff received all the process to which he was entitled.

      2.  Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE